UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL ODAM, *on behalf of himself and all others similarly situated*,<br><br>*Plaintiff*,<br><br>-against-<br><br>ENTERPRISE HOLDINGS, INC., ENTERPRISE RENT-A-CAR, ELRAC, LLC, ALAMO RENTAL (US) LLC, and NATIONAL RENTAL (US) LLC,<br><br>*Defendants*. | **RULE 23 CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Michael Odam ("Plaintiff") on behalf of himself and all others similarly situated brings this action against defendants Enterprise Holdings, Inc. ("Enterprise Holdings"), Enterprise Rent-A-Car ("Enterprise Rent-A-Car"), Elrac, LLC ("Elrac,"), Alamo Rental (US) LLC ("Alamo"), and National Rental (US) LLC ("Naitional," and together with Enterprise Holdings, Enterprise Rent-A-Car, Elrac, and Alamo, the "Defendants"), upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

1.      Plaintiff Michael Odam is an adult, over eighteen years old, a citizen of New York and resides in Kings County.

2.      Plaintiff worked for as a car detailer, detailing and transporting cars at one of their National & Alamo branded rental car locations in Manhattan.

3.      Plaintiff and the Proposed Class were, throughout their entire employment with Defendants, covered, non- exempt employees within the meaning of the New York Labor Law ("NYLL").

4.      At all times material, Defendant ENTERPRISE HOLDINGS, INC. is a foreign business corporation created and authorized under the laws of the State of Missouri.

ENTERPRISE HOLDINGS' service of process address is listed in New York's Department of State Division of Corporations ("New York DOS") records as 600 CORPORATE PARK DR, SAINT LOUIS, MO, UNITED STATES, 63105.  ENTERPRISE HOLDINGS, INC. is listed in New York DOS as the "Foreign Legal Name" of ENTERPRISE RENT-A-CAR.

5. Defendant ENTERPRISE HOLDINGS and its affiliates offer extensive car rental, car sharing, truck rental, fleet management, retail car sales and other transportation services.

6. At all times material, Defendant ENTERPRISE RENT-A-CAR is a foreign business corporation created and authorized under the laws of the State of Missouri. ENTERPRISE HOLDINGS' service of process address is listed in New York DOS  records as 600 CORPORATE PARK DR, SAINT LOUIS, MO, UNITED STATES, 63105.

7. Defendant RENT-A-CAR is one of the largest car rental companies in the US, specializing in car rentals to consumers who need a replacement car as the result of an accident, mechanical repair, theft, or who require a vehicle for a special occasion such as a short business or leisure trip.

8. At all times material, Defendant ELRAC, LLC is a foreign limited liability corporation created and authorized under the laws of the State of Delaware.  ELRAC's service of process address is listed in New York's DOS records as 28 LIBERTY STREET, NEW YORK, NY, UNITED STATES, 10005.

9. Defendant ELRAC is a large-sized organization in the passenger car rental company industry located in New Jersey and processes payments for ENTERPRISE HOLDINGS and ENTERPRISE RENT-A-CAR.  Upon information and belief, ELRAC is a subsidiary of ENTERPRISE HOLDINGS, INC.  ELRAC, LLC is the employer entity on Plaintiff's pay stubs with an address of 1550 State Route 23, Wayne, NJ 07470-7516.

10. Defendant ALAMO RENTAL (US) LLC is a foreign limited liability corporation created and authorized under the laws of Delaware with its headquarters in the State of Missouri. Alamo has its service of process address located at 28 Liberty Street, New York, NY, 10005. Upon information and belief, Alamo is a wholly owned subsidiary of Enterprise Holdings, Inc.

11. Defendant NATIONAL RENTAL (US) LLC is a foreign limited liability corporation created and authorized under the laws of Delaware with its headquarters in the State of Missouri. Alamo has its service of process address located at 28 Liberty Street, New York, NY, 10005. Upon information and belief, National is a wholly owned subsidiary of Enterprise Holdings, Inc.

12. Defendants collectively had over 4,000 car rental locations in the United States, approximately 189 locations in New York State and over 50 locations within the five boroughs of New York City alone.

13. Defendants had the power to hire and fire employees like the Plaintiff, and set the conditions of their employment, including where they work; what they do; and how much they are paid.

14. Defendants are considered a large employer, having at least 11 or more employees during the duration of Plaintiff's employment.

15. Defendants maintained control, oversight, and direction over Plaintiff and the proposed class in regards to timekeeping, payroll, and other employment practices, and functioned as an employer pursuant to the NYLL.

16. Defendants, by virtue of ownership, management, and control over the wages and work of Plaintiff and the proposed class, are considered an employer under the NYLL.

17. Defendants applied the same employment policies, practices, and procedures to

all non-exempt workers, including policies, practices, and procedures with respect to its uniform policy and the frequency with which it paid its employees and the way in which it provided them with wage notices and periodic wage statements.

18. Defendants, by virtue of ownership, management, and control over the wages and work of Plaintiff, are considered an employer under the NYLL §190(3).

19. Defendants constitute a single integrated enterprise or are together a joint employer of Plaintiff and the Proposed Class because, inter alia, they share centralized management and control over employment and human resources functions.

20. The centralized employee management and control results in policies that apply to all New York employees, including policies setting the frequency of pay; work uniforms; and compensation.

21. Defendants share common marketing, branding, and customer service operations.

22. Defendants obtain credit and other resources by holding themselves out as a single business.

23. Defendants' share other essential elements of their business including automobiles that are rented to customers, real estate locations, and products and services related to the maintenance of their automobile fleets.

## JURISDICTION AND VENUE

24. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and the members of the proposed class are citizens of states different from that of Defendants.

25. This court also has diversity jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) and (c)(1). There is complete diversity of citizenship between the opposing parties since Plaintiff resides in New York State and is a citizen of that state. While Defendants have their headquarters in the states of Missouri and New Jersey.

26. There are over 500 members in the proposed class.

27. Defendants are subject to personal jurisdiction in New York as they do business in New York.

28. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

**FACTS**

29. Defendants operate approximately 200 rental car locations branded as Enterprise Rent-A-Car, National Rent-A-Car, and Alamo Rent-A-Car locations in New York State.

30. Defendants are an employer of Plaintiff under the New York Labor Law.

31. Defendants' employees facilitate renting cars to Defendants customers. Approximately 10 non-exempt employees work in every one of Defendants' car rental locations.

32. Defendants had and continue to have the power to hire and fire the employees; supervise and control employee work schedules or conditions of employment; determine the rate and method of payment; and maintain employment records.

33. All of the below factual allegations are, upon information and belief, consistent among Plaintiff and members of the Class.

34. Plaintiff pleads the below facts to the best of his recollection and reserves the right to amend these pleadings upon receiving discovery in this matter, including payroll and

employee records that Defendants are required to maintain under the New York Code of Rules and Regulations ("NYCRR").

35. Plaintiff Michael Odam worked for Defendants as a car detailer from on or around February 28, 2019 until around March 20, 2023 at a car rental location branded as a combined National and Alamo rental car location located in a parking garage at 313 W. 56th Street, New York NY 10019.

36. Plaintiff's primary job duties were physical tasks that included manually washing, scrubbing, and detailing the exterior and interior of Defendants' cars. Plaintiff was also responsible for putting gas in Defendants cars and when necessary, driving to transport cars from Defendants' JFK airport location to the location where Plaintiff worked and other Manhattan locations if Defendants' Manhattan locations were running low on cars.

37. Plaintiff and proposed class members spent at least 25% of the time performing physical tasks that qualify them as Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

38. At all times, Defendants paid Plaintiff on a bi-weekly basis.

39. Plaintiff worked for Defendants full time, working 5 days per week, often more than 40 hours each week.

40. Plaintiff and the Proposed Class were paid at or near minimum wage at all times. For example, when Plaintiff began working for Defendants in February 2019, Defendants paid him the New York City minimum wage of $15 per hour at the time.

41. Approximately 3-4 times per month during Plaintiff's employment, Defendants required Plaintiff to work more than ten hours in a given work shift, usually on days when he was asked to transport rental cars from JFK.

42. Despite working more than ten hours in a given workshift, Defendants failed to pay Plaintiff the required spread of hours pay of one additional hours' pay for each shift worked in excess of ten hours.

43. Defendants required Plaintiff and the proposed class to wear a uniform including a shirt and pants, each emblazoned with Defendants' logos.

44. Plaintiff's rate of pay was always at or below the applicable minimum wage for a large employer in New York City on a weekly basis accounting for all compensation owed, including uniform maintenance pay.

45. Plaintiff was required to wear a uniform at all times while employed by Defendants.

46. Plaintiff did, in fact, wear the uniform every shift.

47. Defendants did not launder Plaintiff's required uniforms, nor did Defendants offer to launder the required uniforms.

48. Plaintiff's uniform was issued by Defendants to Plaintiff for the express benefit of Defendants and it was a condition of Plaintiff's employment to wear it in a clean condition during each shift.

49. Defendants never paid any uniform maintenance pay.

50. Plaintiff was entitled to additional pay for time spent off the clock and money spent in laundering and maintaining Defendants' uniforms.

51. Because of Defendants' improper compensation policies, Plaintiff was deprived of pay, in direct violation of the NYLL

52. This pattern of conduct was continuous throughout Plaintiff's employment.

53. Defendants' unlawful conduct has been widespread, repeated, and consistent.

54. Defendants implemented a policy across all stores and for all employees which is the same policy Plaintiff was subject to–requirement of a work uniform; no option for employer to launder the uniform; and no uniform maintenance pay.

55. Because of Defendants' improper compensation policies, Plaintiff was deprived of timely and weekly pay, in direct violation of the NYLL.

56. This pattern of conduct was continuous throughout Plaintiff's employment.

57. Defendants' unlawful conduct has been widespread, repeated, and consistent.

58. Plaintiff Odam and other similarly situated Manual Workers employed by Defendants suffered actual and acute injuries as a result of Defendants' failure to pay weekly wages. The timely payment of earned wages were and are crucial to Odam's ability to pay day to day and monthly expenses, especially due to the New York area's high cost of living. Defendants' conduct in paying Odam's wages late throughout his employment resulted in him having to pay bills late on more than one occasion.

59. Defendants' late wage payments also deprived Odam and other similarly situated Manual Workers of the time value of their earned money, resulting in tangible financial loss calculated as interest and in other amounts; and loss in the form of the negative impact on their ability to save, invest, and plan for the future. Defendants reaped large rental fees from its customers as a direct result of its Manual Workers' labor, taking in hundreds of millions in revenue, while unlawfully withholding from and paying late its employees who are least able to weather these unjust delays.

## RULE 23 CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action on his own behalf and on behalf of all other similarly situated non-exempt employees paid on on an hourly basis who worked for Defendants in the State of New York at any time during the period commencing six years prior to the filing of this

action and continuing until such further date as the practices complained of are discontinued (the Class Period")

61. The Class Period is further expanded to account for all claims made timely by virtue of Governor Cuomo's March 20, 2020 executive order, Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), and all subsequent and similar orders, including but not limited to, Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, 202.67, and 202.72.

62. The Proposed Class is defined as:

> All exempt, hourly employees of Defendants in the State of New York between the date six years preceding the filing of this complaint and the date a class is certified in this action.

63. The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

64. There are more than 500 class members and the Plaintiff's claims are typical of those other members, in that any one would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

65. Plaintiff and the Proposed Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct.

66. Defendants' corporate-wide policies and practices affected everyone who worked in every store in the same way.

67. Plaintiff is able to fairly and adequately protect the interests of the Proposed Class and have no interests antagonistic to it.

68. Plaintiff is represented by attorneys who are experienced and competent to bring this action.

69. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

70. Common questions of law and fact exist as to the Proposed Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

1. What job duties are performed by the employee?

2. What is the frequency of pay for the employee?

3. Does the employee spend at least 25% of the time at work engaged in physical labor?

4. Whether Defendants required a uniform?

5. Did the Defendants offer to wash the uniform?

6. Did the employee receive uniform maintenance pay?

7. How many hours per week did the employee work?

8. What was the employee's hourly rate of pay?

9. Did the employee work more than ten hours per shift?

10. Did the Defendants pay the employee spread of hours pay for each day they worked in excess of ten hours?

## FIRST CAUSE OF ACTION

## ON BEHALF OF PLAINTIFF AND THE CLASS

*Violation of the New York Labor Law – Failure to Pay Timely Wages*

71. Plaintiff re-alleges and re-avers each and every allegation and statement contained in the paragraphs above of this Complaint as if fully set forth herein.

72. The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiff and the Proposed Class.

73. Defendants failed to pay Plaintiff and Proposed Class on a timely basis as required by NYLL § 191(1)(a), which resulted in an underpayment.

74. Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (1955).

75. Defendants' employees are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

76. As such, the failure to provide wages owed to Plaintiff and all others similarly situated Manual Workers, according to NYLL § 191, constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc*., No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Associates. Contr. Mgmt*., LLC, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

77. Defendants' conduct also constitutes an "injury in fact" suffered by Plaintiff under Article III that is within the federal judicial power because Plaintiff has "suffered an injury in fact that is concrete, particularized, and actual or imminent." *See Caul v. Petco* (infra).

78. Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants compensatory damages in an amount to be determined in this action, plus the amount of the underpayments caused by their untimely wage payments as

liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## SECOND CAUSE OF ACTION

## ON BEHALF OF PLAINTIFF AND THE CLASS

*Violation of the New York Labor Law – Failure to Provide Wage Notice*

79. Plaintiff re-alleges and re-avers each and every allegation and statement contained in the paragraphs above of this Complaint as if fully set forth herein.

80. Defendants willfully failed to supply Plaintiff with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as their primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; *the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191*; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. (emphasis added)

81. Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

82. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars each day that Defendants failed to provide Plaintiff with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive damages.

## THIRD CAUSE OF ACTION

## ON BEHALF OF PLAINTIFF AND THE CLASS

*Violation of the New York Labor Law Unpaid Wages*

*Unreimbursed Uniform Purchase Maintenance Costs*

83. Plaintiff alleges and re-alleges all of the other paragraphs contained herein.

84. Defendants required Plaintiff and the Class to wear a uniform.

85. Defendants did not launder Plaintiff's or the Class's required uniforms, nor did Defendants offer to launder them.

86. Plaintiff and the Class's uniforms were issued by Defendants for the expressed benefit of Defendants and it was a condition of their employment to wear them during each shift.

87. Defendants never paid Plaintiff or the Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

88. Plaintiff and the Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendants required.

89. The hourly rate paid by Defendants to Plaintiff and the Class was either the applicable minimum wage, or a rate that although above the minimum wage was effectively below the minimum wage when calculating the unpaid uniform maintenance pay.

90. Defendants' conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 N.Y.C.R.R. Part 142 the Minimum Wage Order for Miscellaneous Industries and Occupations.

## FOURTH CAUSE OF ACTION

## ON BEHALF OF PLAINTIFFS AND THE CLASS

*Violation of the New York Labor Law*

*Unpaid Spread of Hours Pay*

91. Plaintiff alleges and re-alleges all of the other paragraphs contained herein.

92. Defendants employed Plaintiff and the Rule 23 Proposed Class members within the meaning of New York Labor Law §§ 2 and 651.

93. Plaintiff and the Proposed Rule 23 Class were and are entitled to receive spread of hours pay of one additional hours' pay at the applicable minimum rate for each hour worked in a given day or workshift in excess of ten hours. Defendants failed to pay Plaintiff and the Proposed Rule 23 Class members the required spread of hours pay.

94. Defendants failed to properly disclose or apprise Plaintiff and the Rule 23 Proposed Class members of their rights under the New York Labor Law.

95. Due to the Defendants' New York Labor Law violations, Plaintiff and the Rule 23 Proposed Class members are entitled to recover from Defendants the difference between their actual wages and the amounts that were owed under the New York Labor law. The deficiency accounts for minimum wage for all straight time hours, overtime compensation for all overtime hours, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

96. Plaintiff and the Rule 23 Proposed Class members are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands judgment against Defendant as follows:

a. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Designation of Plaintiff Odam as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

c. Compensatory damages in an amount to be determined in this action;

d. Liquidated damages permitted by law pursuant to the NYLL;

e. An award of civil penalties for the wage notice violation;

f. Prejudgment and post-judgment interest;

g. Reasonable attorneys' fees and costs of the action on the basis of being the prevailing party in a NYLL action to recover wage underpayments; and

h. A jury trial on these issues to determine liability and damages;

i. Such other relief as this Court shall deem just and proper.

Dated:   New York, NY            *Respectfully Submitted,*
         August 17, 2023

_____
Mohammed Gangat, Esq.
LAW OFFICE OF MOHAMMED GANGAT
675 Third Avenue, Suite 1810,
New York, NY 10017
718-669-0714
mgangat@gangatpllc.com